IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BRIAN J. WEBB                                                                                              PLAINTIFF

                v.                               Civil No. 6:14-cv-06037

SGT. MORELAND; CAPTAIN
KING; CPL. HISEK; MAJOR
McHAN; LT. SEPULVADO; SGT.
RICHIE L. GUY; SGT. PETTY;
SGT. McDORMAN; CPL.
WINDSTEIN; and RICHIE L. GUY                                                                  DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Ouachita River Unit of the Arkansas Department of Correction (ADC).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2014), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. Currently before the Court for decision is a Motion for Summary Judgment (ECF No. 12) filed by the Defendants. Plaintiff has responded (ECF No. 28) to the Motion and Defendants have filed a reply brief (ECF No. 34).

**1.  Background**

This case centers on an incident that occurred on January 22, 2014, when a cell extraction team was utilized to remove the Plaintiff from his cell. Plaintiff contends the use of a removal team was unnecessary. Further, he maintains excessive force was used during the removal.

After the removal, Plaintiff alleges he was stripped and put in a restraint chair.[1]  Plaintiff alleges he remained in the chair for five hours with no bathroom breaks, no water, and no opportunity to stretch or exercise.  He also maintains that, contrary to ADC policy, the Mental Health Department was not advised of his placement in the restraint chair.

Plaintiff was issued a disciplinary by Sergeant Richie L. Guy and charged with failure to obey a verbal order of staff, insolence to a staff member, using abusive or obscene language to a staff member, and assault.  ECF No. 30 at 26.  After a hearing on January 30, 2015, Plaintiff was found guilty of all violations.  *Id.* at 28.

Plaintiff alleges that this entire incident was the result of a conspiracy on the part of the Defendants.  He insists that Captain King, conspiring with the other named Defendants, took these actions to retaliate against the Plaintiff for a physical confrontation the Plaintiff had with King in 2008.  Plaintiff alleges his rights were violated by the excessive use of force, the unlawful use of restraints, and the retaliatory conduct.  He asserts violations of 42 U.S.C. §§ 1983, 1985, and 1986.

Defendants have now moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing this case.  Defendants' Motion does not address the merits of the Plaintiff's constitutional claims.

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any

---

[1] A restraint chair is designed to control the movements of an inmate.  The inmate is shackled and tied down while in a seated, upright position.  *See e.g., Estate of Moreland v. Dieter*, 395 F.3d 747, 752 (7th Cir. 2005).

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until** such administrative remedies as are available are exhausted." (emphasis added).

Exhaustion is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will

vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." *Lenz v. Wade*, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The ADC has a written grievance procedure. Administrative Directive 12-16 ("Directive 12-16") governed grievance procedures at the ADC during the time at issue here. A two-step procedure is utilized with the first step involving efforts to informally resolve the issue and the second step consisting of the formal grievance. An informal attempt to resolve a grievance must be submitted within 15 days of the occurrence. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A at pg. 3. Directive 12-16 states in pertinent part:

> Inmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance . . . On the Unit Level Grievance Form . . . the inmate should write a <u>brief statement</u> that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form.

*Id.* at pg. 5, Directive 12-16, IV, ¶ E(2) (emphasis in original).

Once an informal grievance is submitted, the problem solver meets with the inmate within three days. *Id.* at pg. 6, ¶ E(4)(a). If the problem-solver has failed to contact the inmate within three days or the attempt at resolution failed, the inmate may proceed to Step 2, the formal grievance. *Id.* at pg. 8, ¶ F.

The grievance procedure contains the following PLRA notice:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.

> Inmates must attach a copy of the Chief Deputy/Deputy/Assistant Director's response

> to any petition or complaint; otherwise the court or commission may dismiss the case without notice.

*Id.* at pg. 13, ¶ N.

In this case, Defendants maintain the Plaintiff failed to submit a grievance regarding the January 22, 2014, incident prior to filing this case on March 19, 2014. During the relevant time frame, Plaintiff was on "Treatment Precaution," which, among other things, meant that he did not have any writing utensils and could not complete a form himself. ECF No. 14, ¶ 18; *Declaration of Sergeant William Parks, Defts' Ex.* C.

In addition to considering the requirements of the grievance procedure itself, Defendants ask the Court to consider the following:

> (1) Plaintiff did not submit any grievance against the Defendants prior to filing this case, *see Declaration of Barbara M. Williams, Defts' Ex.* B;
>
> (2) on February 4, 2014, Sergeant William Parks assisted the Plaintiff in completing an informal grievance about a different issue by writing down the Plaintiff's grievance, *Declaration of Sergeant William Parks, Defts' Ex.* C;
>
> (3) other informal resolution forms would have been available on February 4th, *Declaration of Sergeant William Parks, Defts' Ex.* C;
>
> (4) an incident report by Lieutenant Michael Elmore, a non-party and a sergeant in Plaintiff's housing unit in January of 2014, indicating that Plaintiff never asked him for help in filing out an informal resolution, ECF No. 34-1 at pgs. 1-2;
>
> (5) an incident report by Sergeant Roger Paul, a non-party and a sergeant in Plaintiff's housing unit in January of 2014, indicating that Plaintiff never asked him for help in filing out an informal resolution and had Plaintiff done so he would have assisted, ECF No. 34-1 at pgs. 3-4;
>
> (6) an incident report by Captain Jacob King, who worked in Plaintiff's housing unit in January of 2014, indicating that Plaintiff never asked him for help in filing out an informal resolution and that he instructed staff to help any inmate with informal resolutions and grievances, ECF No. 34-1 at pgs. 5-6;
>
> (7) an incident report by Parks indicating that other than that one occasion Plaintiff never asked him for help in filing out another statement, ECF No. 34-1 at pgs. 7-8;

(8) a declaration of Lowell Swearingen, a licensed certified social worker assigned to the ORU, who indicates he is familiar with the Plaintiff and was never asked to write out a grievance for him and had Plaintiff asked he would have assisted him, ECF No. 34-1 at pgs. 9-10;

(9) a declaration of hearing officer, Terrie Bannister, indicating she served as disciplinary officer over two hearings involving the Plaintiff on January 23, 2014, and that Plaintiff did not ask her to write a grievance for him. Further, Banister indicates she overheard him speaking to Officer Whittington concerning writing a grievance and Whittington responded to let her know if he needed any assistance in writing one, ECF No. 34-1 at pgs. 11-12; and

(10) a disciplinary hearing form indicating Plaintiff appeared before Justine Minor on January 30, 2014, ECF No. 34-1 at pg. 17.[2]

Plaintiff concedes that he did not file a written grievance regarding the January 22, 2014, incident. However, he states he was prevented from doing so by virtue of the Treatment Precautions and the refusal of ADC personnel to write a grievance for him. Plaintiff believes the Defendants refused to assist him so that the time limit on his right to submit a grievance would expire. ECF No. 30 at pg. 7. Further, he notes that most of the people he had to rely on for help in exhausting the administrative procedures were the officials he was submitting the grievance about. ECF No. 30 at pg. 21.

Given the circumstances, Plaintiff maintains the grievance procedure was not available to him. He asserts that the only thing he could do, and what he did repeatedly, was to verbally notify the ADC officials about his grievance. ECF No. 30 at pg. 10.

Specifically, by Declaration, Plaintiff states:

I asked all of the supervisory officers over the RPU where I was housed for help with

---

[2]In their brief, Defendants state that Plaintiff did not ask Minor for assistance in writing a grievance or informal resolution. ECF No. 34 at ¶ 14. There is no apparent support for this statement. The form submitted merely shows that Minor was the hearing officer and the Plaintiff was found guilty of the charged disciplinary violations.

> the filing of an grievance/informal resolution on all issues contained in my complaint.
>
> But all attempts to no avail.
>
> I asked my mental health counselor for assistance to file a grievance but he stated he couldn't because it was a security issue.[3]
>
> Sgt. Parks did file a emergency grievance for me on an issue un-related to this civil action. But only after I protested and caused a major disturbance.
>
> By AD 12-16 correctional officers are to assist inmates that are not able to file grievances. In filing such grievances.
>
> Correctional officers disregarded AD 12-16 and refused to assist me in filing a grievance on the issues contained in the above civil case.
>
> I did ask Sgt. Parks to help with the filing of a grievance on the issues contained in the complaint but Sgt. Parks refused.

ECF No. 28 ¶¶ 7-12.

Plaintiff also maintains he wrote to Warden Muslewhite to let him know about the physical assault and the disciplinary he was give but that Muslewhite's response dealt with a separate disciplinary. ECF No. 30 at pgs. 21-22 & 25. The document Plaintiff has attached is a "major disciplinary appeal form" dated February 27, 2014, which Plaintiff indicates was concerning a disciplinary given on January 22, 2014, by Sergeant Richie L. Guy. ECF No. 30 at 25. The conviction is affirmed but the text indicates the review was of a disciplinary Plaintiff received on February 5, 2014, an entirely different disciplinary violation report. *Id.* Defendants have offered no explanation for the inherent inconsistency in this form.

Finally, in addition to the declaration quoted above, Plaintiff submits two affidavits. In the first, he indicates he asked for help in submitting an informal grievance on August 8, 2014, at 4:22

---

[3] Plaintiff does not name the mental health worder. And, Swearingen only indicates he is familiar with the Plaintiff.

a.m. and was told that the current shift could not assist him because everyone was at chow. ECF No. 30 at pg. 30. In the second affidavit, he states that on August 8, 2014, at 4:35 a.m. he was sitting in the day area when a supervisory officer entered the housing unit and left without addressing the issue of Plaintiff's grievance. *Id.* at pg. 31.

The issue here is whether Plaintiff had any available administrative remedies. Defendants argue they have a clear grievance procedure, staff offers assistance when necessary, and Plaintiff failed to exhaust his remedies. In contrast, Plaintiff asserts that because of his housing status and the refusal of Defendants, or other ADC personnel, to assist him, he had no **available** administrative remedies.

"Available remedies are capable of use for the accomplishment of a purpose: immediately utilizable and accessible." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015)(internal punctuation marks and citation omitted). "Inmates are excused from exhausting remedies when officials have prevented prisoners from utilizing the procedures, or when officials have failed to comply with the grievance procedures." *Id.* at 452 (internal quotation marks and citation omitted). Grievance procedures have been found to be unavailable when prison officials fail to respond to requests for grievance forms, fail to timely respond to grievances, refuse to respond to grievances, or tell the prisoners that there are no available remedies. *Id.* (collecting cases). Mere delays in responding do not make a grievance procedure unavailable. *Id.*

I believe there is a genuine issue of material fact as to whether the Plaintiff had any "**available**" administrative remedies. Defendants argue that Plaintiff has provided no "evidence of" his "alleged efforts" to exhaust the grievance procedure. ECF No. 34 at ¶ 6. They maintain they have offered "evidence that clearly dispels Plaintiff's claim." *Id.*

Apparently, Defendants believe the Plaintiff's own sworn statements are insufficient to

withstand their "evidence" because they have offered incident reports and several declarations to support their claim that there were available remedies. As noted above, failure to exhaust is an affirmative defense on which the Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. Plaintiff has come forward with sworn statements that he was prevented from filing a grievance with respect to the January 22nd issue. *See e.g., Williams v. Paramo*, 775 F.3d 1182, 1191-92 (9th Cir. 2015)(sworn statement by Plaintiff that the administrative remedies were not available to him meets his burden of production). Thus, Defendants must establish there are no disputed issues of material fact as to whether the Plaintiff had an available administrative remedy. *Id.* at 1192; *see also Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 746 (10th Cir. 2014)(prison officials must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to the Plaintiff).

At the summary judgment stage, the Court is not free to weigh the evidence or determine which statements are more credible than the others. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866 (2014); *United States v. Bame*, 721 F.3d 1025, 1028 (8th Cir. 2013)("[A]t the summary judgment stage, the court is not permitted to weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter"). The Court is not free to disbelieve Plaintiff's sworn statements. Here, there are wholly contradictory statements as to the availability of the grievance procedure. *See e.g., Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006)("The affidavits of the prison officials and [Plaintiff's] other grievances and filings merely turn this into a dispute with competing evidence, requiring a fact finder to evaluate the credibility of the witnesses and the other evidence in the record").

### 4. Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF

No. 12) be **DENIED.**

The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 3rd day of June 2015.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE